```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
```

------------------------------X **Docket#**
MATTHEW McDERMOTT,            : 23-cv-01274-HG
                              :
            Plaintiff,        :
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
KALITA MUKUL CREATIVE INC.,   :
                              : September 1, 2023
            Defendant         :
------------------------------X

```
   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
       BEFORE THE HONORABLE RAMON E. REYES, JR.
           UNITED STATES MAGISTRATE JUDGE
```

**A P P E A R A N C E S:**
(VIA VIDEO/AUDIO)

| | |
|---|---|
| **For the Plaintiff**: | **Joshua D. Vera, Esq.**<br>Sanders Law Group<br>333 Earle Ovington Boulevard<br>Suite 402<br>Uniondale, NY 11553 |
| **For the Defendant**: | **Francoise Djoukeng, Esq.**<br>Covington & Burling LLP<br>3000 El Camini Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306 |
| | **Gawon Go, Esq.**<br>Covington & Burling LLP<br>620 Eighth Avenue<br>New York, NY 10018 |
| **Transcription Service**: | Transcriptions Plus II, Inc.<br>61 Beatrice Avenue<br>West Islip, New York 11795<br>RL.Transcriptions2@gmail.com |

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

Proceedings

1        THE COURT: Good morning. This is Magistrate
2 Judge Reyes. We're holding a telephone conference in the
3 case of *McDermott v. Kalita Mukul Creative Inc.*, docket
4 number 23-cv-1274.
5        Counsel for the plaintiff, please state your
6 name for the record.
7        MR. VERA: Joshua D. Vera from Sanders Law
8 Group on behalf of plaintiff, Matthew McDermott.
9        THE COURT: Counsel for the defendant?
10        MS. DJOUKENG: Francoise Djoukeng, counsel from
11 Covington & Burling on behalf of defendant, Kalita Mukul
12 Creative Inc.
13        THE COURT: Good morning. So folks, what is
14 going on?
15        MS. DJOUKENG: Your Honor, the --
16        MR. VERA: Sorry.
17        THE COURT: Mr. Vera, why don't you bring me up
18 to speed on what's going on?
19        MR. VERA: As a brief summation, your Honor,
20 discovery proceeded in the case with Judge Gonzalez's
21 order directing the parties to proceed expeditiously with
22 discovery.
23        Pursuant to Judge Gonzalez's August 11th order,
24 fact discovery was extended till September 15th and we
25 are preparing to provide supplementary discovery

1  responses to defense counsel.  I believe defense counsel
2  is also to provide some supplementary discovery responses
3  at the plaintiff's discovery request earlier this week.
4         There have been discussions as to settlement.
5  I believe they have broken down and there has been no
6  progress I believe in recent weeks, I could even say more
7  strongly in the past few months.
8         THE COURT:  Okay.  Ms. Djoukeng, do you want to
9  add on to that?
10        MS. DJOUKENG:  Yes, your Honor.  Yes, please,
11 your Honor.
12        I think I'll just back up a little bit.  Your
13 Honor, this is a low value, high burden copyright
14 infringement action.  Defendant has an affirmative
15 defense, the fair use doctrine, which defendant believes
16 is a reasonable one and one that will prevail.  However,
17 even if the Court does not find in defendant's favor on
18 liability, plaintiff would only be entitled to minimal
19 monetary damages.
20        Defendant's position is that there is a
21 relatively small amount of potential damages at issue in
22 this case which cannot possibly justify this continued
23 expense and burden of litigation.  Defendant would prefer
24 to avoid additional unnecessary litigation and remains
25 willing to settle the case on fair and reasonable terms

1  given the plaintiff's potential recovery.  But
2  plaintiff's counsel's failure to negotiate in good faith
3  has unnecessarily drawn this out.  Plaintiff has made
4  arbitrary settlement demands that are so out of step with
5  the facts, with the realities of this case.
6        MR. VERA:  If I could just speak to that, your
7  Honor?
8        THE COURT:  Okay.
9        MR. VERA:  Just to provide a little bit more
10 context, to add to defense counsel's summation, we are of
11 course interested in resolving this.  We have made a
12 representation to defense counsel in numerous instances
13 in terms of early resolution of the preferred
14 alternative.
15       That being said, defense counsel's position as
16 to settlement has not changed since April of this year
17 despite several attempts on our end to provide not only
18 counter-proposals without diminishing our position
19 substantially, but even so to speak arguing against
20 ourselves.  Nothing has been sufficient in terms of
21 moving the needle.  We now have the prospect of expert
22 discovery at defense counsel's insistence looking ahead.
23       That being said, the damages plaintiff is
24 seeking is well within the statutory range provided under
25 17 U.S. Code 504 and we remain quite puzzled as to why

1  there has been no movement on the part of defendant.

2              THE COURT:  You made a monetary demand?

3              MR. VERA:  Yes, your Honor.

4              THE COURT:  Did defendant counter that with

5  anything?

6              MR. VERA:  Yes.  I believe late March to early

7  April there were at least some initial exchanges of

8  settlement proposals.  I think the most recent as to

9  defendant was an April proposal of $750.  We did counter

10 to that.  I believe they reiterated that same position to

11 that effect.  Of course in large step with defense

12 counsel's summation in terms of trying to resolve this, I

13 mean we don't disagree in terms of the evaluation they're

14 representing, we did even provide a reduced figure at

15 defense counsel's request which did not move the needle

16 at all.

17             THE COURT:  What was that reduced figure?

18             MR. VERA:  Currently the most recent settlement

19 position we communicated to defendant was a demand of

20 11,000.

21             THE COURT:  So plaintiff is currently at 11,000

22 and defendant is at $750.  Is that right?

23             MR. VERA:  Yes, your Honor.

24             MS. DJOUKENG:  That is correct from defendant's

25 position.

1  Your Honor, if I may add some more facts to
2  what plaintiff's counsel has offered?
3  THE COURT: Go ahead.
4  MS. DJOUKENG: Your Honor, I'm going to quote
5  from plaintiff's responses to defendant's discovery
6  requests about licensing fees and associated with the
7  photograph that is at issue.
8  In response to interrogatory number 12 which
9  states, "Identify any amount paid to you in connection
10 with any license related to the photograph, the license
11 fee and the license used." Response, "Plaintiff responds
12 to this interrogatory in that he was paid a day rate by
13 the New York Post of $470 for both his photography
14 services and licensing of the photograph for use in the
15 New York Post publication."
16 $470 is the payment and based on plaintiff's
17 deposition testimony, the New York Post obtained a
18 perpetual license. And not only that, plaintiff took
19 multiple photos. So multiple photos were given to the
20 New York Post and one of those photos is the photograph
21 at issue in this case.
22 But the figure here is $470. Logic dictates
23 that the licensing fee is less than $470 because the $470
24 covers both the photography services and the licensing
25 fees. And as your Honor is aware, of course district

Proceedings

1  courts in the Second Circuit typically multiply a
2  licensing fee by three times as an approximation of
3  damages.  But we believe this is a case of non-
4  infringement, excuse me, a case of innocent infringement
5  assuming that plaintiff were to win on liability.  And
6  because of that, we are trying to offer something that's
7  within reason based on the realities of this case.
8  Defendant's arbitrary request for 11,000 is so far out of
9  step with the approach of courts in this district
10 circuit, we struggle to come to a reasonable settlement.
11             MR. VERA:  If I may continue to that, your
12 Honor?
13             THE COURT:  All right.
14             MR. VERA:  I'll be brief, your Honor.
15 Synonymous with some of the prior decisions in the
16 eastern district, of course we are also of the mind that
17 we would be, despite defendant's unwillingness to provide
18 I would say adequate documentation of the profits
19 attributable to the use as well as profits attributable
20 to the website -- I understand we still have some period
21 of discovery, so I'll just refrain in terms of commenting
22 in terms of anything conclusive.  We would likely be
23 seeking statutory damages.  Synonymous with that, the
24 majority approach as well as across the courts in the
25 Second Circuit as well as specifically in the eastern

1  district, as your Honor is aware, is providing a three to
2  five times multiplier as to a baseline licensing fee as
3  to a statutory damages award.
4  　　　　Defense counsel is insistent that a day rate
5  which was afforded to the New York Post which is Mr.
6  McDermott's longtime employer as well as also promises
7  the continued photography assignments, is just
8  inapplicable to this context.  There is no prior
9  relationship with defendant.
10 　　　　And to speak frankly, your Honor, I mean had
11 they approached Mr. McDermott for any license, that
12 discussion could have been had.  Simply appropriating the
13 copyrighted material of another and then demanding that
14 you are provided the same terms as someone who lawfully
15 utilized the image is just something that we don't find
16 controls the matter.
17 　　　　And speaking to defendant's defenses as to fair
18 use, we've been offered no substance as of this time as
19 to any innocent infringement outside of the purported
20 source for which defendant acquired the image.  Speaking
21 of fair use, it is our position that the image itself is
22 no more than an illustrative aid to identify the subject
23 of the photo and consistent with --
24 　　　　THE COURT:  What are the statutory damages that
25 are at play here?

1  MR. VERA:  So under 17 U.S. Code 504,
2  presumably 504(c), the damages range would be $200 for
3  innocent infringement, 750 to $30,000.  And then for
4  willful infringement the ceiling rises to $150,000.
5  THE COURT:  Why don't you settle the case for
6  2,500 bucks?
7  MS. DJOUKENG:  Your Honor, defendant would be
8  happy to settle this case and our client has given
9  business authorization to do that expeditiously.  Your
10  Honor, our client is a small independent news
11  organization and we've tried to disabuse plaintiff's
12  counsel of the notion that there were any profits.  We
13  produced documents showing according to web analytics the
14  story had about 73 views over the course of two years.
15  There was no money made here.  We've tried to -- your
16  Honor, we're happy to settle this case today for that
17  amount.
18  MR. VERA:  I'm sorry to go back and forth, your
19  Honor.  I know just in terms of just adding to that, we
20  do feel, notwithstanding defense counsel's assertion that
21  it's a small business, that insurance is at play in this
22  matter that would be liable for any judgment that would
23  be awarded to plaintiff should he be successful
24  prosecuting this matter.
25  In terms of the $2,500, at this time we do feel

1  that a damages range would definitely, it is plaintiff's
2  position, would warrant a higher figure notwithstanding
3  the combativeness that we've seen from defense at this
4  time which has ballooned attorneys fees unnecessarily.
5           THE COURT:  So you're saying no to 2,500 bucks?
6           MR. VERA:  At this time, your Honor, I just
7  want to process in terms of we had hoped even if that was
8  the end point in terms of our initial discussions with
9  defense counsel, I think that would have been an
10 agreeable proposal at that time.  However, considering
11 the status which this has proceeded to date, we do
12 believe that we would be disinclined to accept $2,500 in
13 resolution of this claim.
14          MS. DJOUKENG:  Your Honor, if defense counsel
15 may respond?
16          THE COURT:  Go ahead.
17          MS. DJOUKENG:  Your Honor, the New York Post is
18 presumably a large news organization and they paid
19 plaintiff $470 both for photography services and for
20 multiple photographs.  And the licensing included was a
21 perpetual license.  Our client obtained the photograph,
22 and we produced this in discovery, from Instagram.  There
23 was no attribution indicating a copyright holder such as
24 plaintiff.  And as soon as we became aware, as soon as
25 defendant became aware of this lawsuit, the defendant

1  replaced the photograph with a photo from the state
2  government website.  We honestly believe this is a case
3  of innocent -- you know, assuming plaintiff is able to
4  win on liability, this would be a case of innocent
5  infringement which we're down to $200.  Defendant, you
6  know, was eager to settle even for an amount that we feel
7  is way out of step with the likely approach a Court would
8  take because we are serious about resolving this case.
9           Although we feel 2,500 is frankly an abusive
10 settlement point for us, but we were grateful for your
11 Honor for suggesting that.  But we do feel that this is a
12 case that can be resolved.  The plaintiff's counsel
13 really believes that we've made, the defendant has made a
14 profit which defendant absolutely has not and we produced
15 documents to that effect showing that the story had a
16 terrible performance and there was limited views.  And so
17 we just feel that this is an ongoing case that's just
18 abusing the court system.
19           MR. VERA:  If I may speak, your Honor?
20           THE COURT:  Go ahead.
21           MR. VERA:  My apologies.  I'll just try and be
22 brief.  I think defense counsel is conflating the
23 approach between actual damages and statutory damages.
24 Consistent with presumably if we were to proceed with
25 statutory damages, we provided several license invoices

1  initially.  Several were rejected by defense counsel.
2  One in particular we have been utilizing in search of a
3  baseline license fee (indiscernible) images.  Defendant
4  has rejected that as well.
5           However, and particularly with this particular
6  image, I don't believe that defense counsel can
7  legitimately argue that it would be entitled to the same
8  figure provided to the New York Post as their was no
9  existing relationship between the defendant and
10 plaintiff, nor does defendant have the additive of the
11 promise of additional photography assignments to
12 plaintiff.  We just do not feel that's an applicable
13 comparison in terms of a baseline license fee.
14           THE COURT:  Yes, so if you convince a jury that
15 this is innocent infringement, you get 200 books.  Right?
16           MS. DJOUKENG:  That is correct, your Honor.
17           THE COURT:  This is all about attorneys fees.
18           MS. DJOUKENG:  Exactly.
19           MR. VERA:  We would disagree with that, your
20 Honor.  We believe --
21           THE COURT:  All right.  Good luck, good luck.
22 My suggestion is you take the 2,500 bucks, but if you
23 don't want to, that's fine.
24           MR. VERA:  I understand, your Honor.
25           THE COURT:  One picture.  How many views?

```
                                                          13
                         Proceedings
```

1          MS. DJOUKENG: Your Honor, 70 -- excuse me, 96

2  total views between 2021 and 2023. And we provided the

3  website analytics to plaintiff's counsel. They have this

4  information. We immediately replaced the photograph upon

5  commencement of this lawsuit, you know, because obviously

6  there was a challenge to copyright infringement. There

7  is no willful intent here assuming plaintiffs can

8  convince the judge to award in plaintiff's favor on

9  liability. I mean this is a ridiculous case.

10         And in fact, as I'm sure plaintiff's counsel is

11 aware, attorneys fees are not awarded as a matter of

12 course. And I do believe a district court judge in the

13 Eastern District of New York would find that plaintiff's

14 overly aggressive approach probably doesn't warrant

15 attorneys fees.

16         THE COURT: Have you made an offer of judgment?

17         MS. DJOUKENG: No, that's our next step, your

18 Honor. We were hoping that this might resolve the case

19 but that's exactly our next step. We've drafted one.

20         THE COURT: Okay. Again, my suggestion is you

21 take the 2,500 bucks but you don't have to.

22         Is there a --

23         MR. VERA: I'm sorry to --

24         THE COURT: You're still at 11,000?

25         MR. VERA: At this point, your Honor, we would

Proceedings

14

1  be hypothetically speaking consistent with the baseline
2  license fee we provided, excluding attorneys fees and
3  consideration in its entirety, we provided a baseline
4  license fee of I believe $2,550.  Even at the low end of
5  the statutory damages range, a three times multiplier, we
6  would be willing to resolve this for 7,500.
7           But if I could just address the attorneys fees
8  issue in that sense, your Honor, we had, in terms of our
9  prior discussions, made several attempts to resolve this.
10 Had defendant been a little more open to some change or
11 shift in its position months ago, we would have never
12 gotten to this point.
13          MS. DJOUKENG:  Excuse me, your Honor, if I may
14 respond, defendant's counsel may respond?
15          THE COURT:  Go ahead.
16          MS. DJOUKENG:  We disagree with plaintiff's
17 counsel's characterization about settlement negotiations.
18 We have tried to resolve this case but the distance in
19 our positions has made it very difficult.
20          Your Honor, plaintiff's counsel continues to
21 refer to these damages calculator based on, you know,
22 licensing fees from the Getty Image.  That's irrelevant,
23 your Honor.  Plaintiff has produced, you know, the
24 licensing fee plus photography services.  That's the
25 only, you know, reasonable approximation of any damages

14

Proceedings

1  be hypothetically speaking consistent with the baseline
2  license fee we provided, excluding attorneys fees and
3  consideration in its entirety, we provided a baseline
4  license fee of I believe $2,550.  Even at the low end of
5  the statutory damages range, a three times multiplier, we
6  would be willing to resolve this for 7,500.
7           But if I could just address the attorneys fees
8  issue in that sense, your Honor, we had, in terms of our
9  prior discussions, made several attempts to resolve this.
10 Had defendant been a little more open to some change or
11 shift in its position months ago, we would have never
12 gotten to this point.
13          MS. DJOUKENG:  Excuse me, your Honor, if I may
14 respond, defendant's counsel may respond?
15          THE COURT:  Go ahead.
16          MS. DJOUKENG:  We disagree with plaintiff's
17 counsel's characterization about settlement negotiations.
18 We have tried to resolve this case but the distance in
19 our positions has made it very difficult.
20          Your Honor, plaintiff's counsel continues to
21 refer to these damages calculator based on, you know,
22 licensing fees from the Getty Image.  That's irrelevant,
23 your Honor.  Plaintiff has produced, you know, the
24 licensing fee plus photography services.  That's the
25 only, you know, reasonable approximation of any damages

1   in this case.  It's irrelevant what some online
2   calculator that you can manipulate says for licensing
3   fees.  The evidence is already here.  Plaintiff is
4   ignoring case law and I think is going to be sorely
5   disappointed if he continues to litigate.
6            THE COURT:  All right --
7            MR. VERA:  Just as a -- I'm sorry.
8            THE COURT:  Last word.
9            MR. VERA:  Yes, your Honor.  Just as a final
10  point -- and my apologies, your Honor.  As you can see,
11  this has definitely been a contentious case.  In terms of
12  the Getty images, the defense counsel's position is just
13  out of step with the prior decisions in the eastern
14  district which have accepted the use of Getty images as
15  well as (indiscernible) approximations in search of a
16  fair market value for a copyrighted work.
17           THE COURT:  Has anyone else licensed this
18  picture other than the Post?
19           MR. VERA:  To my knowledge, the New York Post
20  was the only licensee of the image.  But my client did
21  provide authorization he has represented to Polaris, but
22  no one had licensed that image from Polaris to my
23  knowledge, your Honor.
24           THE COURT:  What is the fee that he has on
25  Polaris?

                                                                16
                         Proceedings

```
                                                                16
                         Proceedings
 1            MR. VERA:  I am not aware of that at this time,
 2   your Honor.
 3            MS. DJOUKENG:  Your Honor, this is defendant's
 4   counsel.  If I may, just a small minor point.  In
 5   plaintiff's deposition testimony, he said he anticipates
 6   no future revenues from this license and he said he has
 7   not received any offers for additional licensing fees.
 8   It would suggest a very negligible market, if any.
 9   There's just -- I'm sorry, your Honor, I just wanted to
10   add that point.
11            THE COURT:  All right.  Look, I'll let Judge
12   Gonzalez know that we were unable to settle the case.
13   And do your expert discovery I guess.  Spend a whole lot
14   of money for not a whole lot of return.
15            I mean realistically plaintiff could come out
16   on the losing end of this even if he wins.  Right?
17            MS. DJOUKENG:  Mm hm.
18            THE COURT:  He could get statutory damages on
19   the low end, or the middle.  The cost of litigating will
20   exceed that.  There's no guarantee of getting his
21   attorneys fees especially if he files a Rule 68 and it's
22   not accepted.  It seems to -- no sense to me.
23            So what else remains in discovery?
24            MS. DJOUKENG:  Your Honor --
25            MR. VERA:  If I can speak to that?
```

1           THE COURT:  Go ahead, Mr. Vera.
2           MR. VERA:  We have a deposition pursuant to
3  Federal Rule of Civil Procedure 30(b)(6) the 12th of
4  September.  I believe that would, outside of the
5  supplementary responses as to both parties regarding
6  discovery, I believe that would conclude fact discovery.
7  And then for Judge Gonzalez's August 11th order we would
8  be moving with expert discovery subsequent.
9           THE COURT:  What expert discovery do you need
10 to do?
11          MR. VERA:  Your Honor, this --
12          MS. DJOUKENG:  (Indiscernible) --
13          MR. VERA:  I apologize, I don't want to
14 interrupt.
15          MS. DJOUKENG:  Okay.  Your Honor, this is
16 defendant's counsel.  Initially we thought because
17 plaintiff's counsel failed to provide any documents
18 related to damages that we would need a damages expert
19 but we are unlikely to proceed with expert discovery at
20 this point.
21          THE COURT:  Does plaintiff need an expert?
22          MR. VERA:  We do not, your Honor, and we did
23 note that in our letter to Judge Gonzalez.  We did not
24 feel it was necessary.
25          THE COURT:  Okay.  Let's save some time and

Proceedings

1  effort.  All right.  Anything else we need to discuss?
2          MR. VERA:  Nothing for plaintiff, your Honor.
3          MS. DJOUKENG:  Nothing further from
4  defendant's counsel.  Thank you, your Honor.
5          THE COURT:  All right.  Thank you.
6          MS. DJOUKENG:  Thank you.  Bye-bye.
7          MR. VERA:  Thank you, your Honor.
8                  (Matter concluded)
9                       -oOo-

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6th** day of **September**, 2023.

*Mary Greco*
Transcriptions Plus II, Inc.